Raymond Glenn REED, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00004–CR.

Court of Appeals of Texas,
El Paso.

Oct. 28, 1992.

Discretionary Review Refused
Feb. 3, 1993.

Paul Williams, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Midland, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

OSBORN, Chief Justice.

This is an appeal from a conviction for the offense of aggravated sexual assault of a child—habitualized by the allegation of two prior felony convictions. The court assessed punishment at life imprisonment. We affirm.

In the Appellant's sole point of error, he asserts the court erred in failing to grant his motion for new trial. The Appellant's trial began on October 2, 1991 in Midland, Texas. On October 3, 1991, a local newspaper printed an article which contained the following information:

> According to the indictment against Reed, the prosecution is seeking an enhancement of the charges because of previous criminal convictions.
>
> Reed has been convicted of felony theft of oilfield [sic] equipment and felony burglary of a habitation, officials said.
>
> Reed remained in jail Wednesday on charges of aggravated sexual assault, parole violation and various local ordinance violations, jail officials said.

The Appellant made a motion for mistrial to the court and had the article introduced into evidence. The court suggested that the jury be questioned to determine if anyone had read the article and, if so, make other inquiries. The Appellant objected to this procedure and the court did not make further inquiry. The court overruled the Appellant's motion for mistrial. On the same day, the jury retired to deliberate and returned a verdict of guilty to the offense of aggravated sexual assault of a child.[1] Prior to the discharge of the jury, the court

inquired whether anyone had read the article and if anyone had mentioned it to the jury. Juror Marilyn Horvath replied affirmatively. She had not been sworn.

A hearing was held on October 15 and 16, 1991 on the issue of jury misconduct. It does not appear in the record that, at that time, any written motion for new trial was pending before the court.[2] The State did not object to the hearing and, after being sworn, all twelve jurors were questioned. On October 18, 1991, the court overruled the motion for mistrial prior to sentencing. A written motion for new trial appears in the record showing a filing date of October 23, 1991. A written order denying the motion for new trial was signed on November 26, 1991.

We must first address the State's contention that the court did not err in denying the Appellant's motion for new trial in that there were no affidavits attached to the motion and no evidence was presented concerning the motion for new trial.

 There exists no authority for the court to grant a new trial on its own motion. *Dugard v. State*, 688 S.W.2d 524, 528 (Tex.Crim.App.1985). A motion for new trial alleging jury misconduct must be supported by the affidavit of a juror or some other person who was in a position to know the facts, or must state some reason or excuse for the failure to produce the affidavits. *Id.* at 528. The affidavit must state facts—not mere suspicions. *Id.* at 529. Further, the mere attachment of an affidavit of a juror without offering actual proof of such allegation does not constitute proof of jury misconduct. *Id.* at 529. The policy of the general rule which requires an affidavit of a juror or other person who was in a position to know the facts to be attached to a new trial motion alleging jury misconduct is to discourage "fishing expeditions" in an attempt to impeach a jury verdict.

---

1. The Appellant did not take the stand and there was no evidence before the jury of any prior convictions. The court assessed punishment.

2. However, prior to sentencing on October 18, 1991, the court stated that there was a pending oral motion for mistrial and the court overruled

the motion. The record does not reveal the content of this oral motion. The court characterized the hearing which commenced on October 15 as a hearing on the Appellant's motion for new trial.

*Id.* at 529; *Stephenson v. State*, 494 S.W.2d 900, 908 (Tex.Crim.App.1973).

■ The Appellant's written motion for new trial mentions that one juror had read the article in the newspaper and further states that five of the twelve jurors had heard about the Appellant's prior convictions. This is obviously in reference to the testimony at the hearing where the twelve jurors testified although it is not specifically so stated.

Under the specific facts of the present case, we must reject the State's contentions with regard to the inadequate motion for new trial. The problem of the newspaper article was known during trial and was specifically made known to the court and the parties after the jury's verdict was returned. The State did not object to any of the court's procedures and did not object to the hearing held on the 15th and 16th of October. It cannot be said that the oral and written motions for new trial were "fishing expeditions" as the specific problem was readily apparent to both parties and the court prior to the close of evidence. In this rare instance, we find that the Appellant adequately raised the issue of jury misconduct. In *Norman v. State*, 588 S.W.2d 340 (Tex.Crim.App.1979), the Court recognized the right of a trial court to make an inquiry into possible jury misconduct.

Juror Maureen Ann Kopet testified at the hearing on the 15th of October. She stated that she was aware of the newspaper article but had not read it. Halfway through their deliberations, Juror Horvath referred to the fact that the Appellant had been convicted previously and stated, "but it wasn't of a sexual nature," and then stated, "so it didn't make any difference." Kopet testified that was the only time it was brought up.

Juror Willie Alvin Long testified that he read the article after the trial was over. Someone mentioned the existence of the article but he did not hear anyone state anything concerning the contents of the article.

Juror Lawanda Diane Penny stated that Juror Horvath, during deliberations, mentioned that there had been an article in the paper and that the Appellant had prior convictions. Penny related that someone responded, perhaps her, that it "had nothing to do with what we were talking about at the time." In response to the prosecutor's question, "[t]his response that you remember hearing, was there anything along the lines that we are not supposed to talk about that?", Penny responded, "[u]h-huh, something to that effect, yes. I don't remember the exact words."

Juror Larry Donnell Pitts testified that an individual mentioned that there was an article in the paper concerning the trial during a recess before the jury was given the charge. Nothing was said about the contents of the article and it was not mentioned again.

Juror Marilyn Horvath related that near the beginning of deliberations, she mentioned the article to the jury and mentioned that the article stated that the Appellant had been previously convicted on two occasions of felony offenses. No one responded to her and she was not sure how many people heard her although other jurors could have heard her if they had been paying attention. Horvath stated that the subject never came up again.

Juror Cynthia Jo White testified that she did not read the article. After deliberations began, Marilyn Horvath mentioned the article and asked if anybody had read it and everyone responded that they had not and the subject died. Later someone asked if the Appellant had been charged with a sexual crime before and Marilyn Horvath said, "no, the paper mentioned burglary." White considered the comment to be a passing remark that had not been discussed by the jury.

Juror Brenda Nell Corn related that while they were waiting for the last witness to arrive, one of the women at the end of the table asked if anyone had seen the article in the morning paper. Corn stated that she did not hear anyone mention that the Appellant had been convicted of any crime, and she did not know of the contents

of the article prior to delivery of the verdict.

Juror Charlene Annette Fox testified she had heard of the existence of the article at her office before she went to court and she stated to that person that she was not supposed to talk about such things. In the jury room, Marilyn Horvath mentioned that the Appellant had two prior convictions and that Horvath then added that they did not have anything to do with what the trial was about. Fox stated that in response to the statement of Horvath, two of the jurors stated that they were not supposed to talk about or consider such matters. She related that the matter did not come up again. She could not say who had heard Horvath's comment or who had heard the statement that it should be disregarded.

Juror Stacy Leann Mathews testified that she had not read the article. She related that Juror Horvath mentioned during jury deliberations that the Appellant had been previously convicted. Mathews stated that someone asked what the charges were and Horvath responded that it was something like theft. Mathews then stated that she told Horvath that they were not supposed to take anything else into consideration other than what they heard in the courtroom. Horvath responded, "[y]es, I know." Mathews stated that the matter did not come up again.

Juror Joseph N. Shuffield related that he did not read the article. He stated that a female juror asked if anyone had read the paper and that one other person stated that they had. Shuffield testified that he did not remember anything said about any prior convictions of the Appellant and that the matter was not mentioned again.

Juror James David Daniel stated that he did not read the article. During deliberations, Juror Horvath mentioned that the paper said that the Appellant had prior convictions and Daniel thought that there could have been mention of some pending misdemeanor charges. Daniel stated:

I think I responded that I didn't think we were supposed to discuss anything like that, and I think everybody knew

that as soon as she mentioned it, and she mentioned it and the discussion pretty much died right there. I wouldn't call it a discussion.

Daniel stated that he considered the comment to be a passing remark.

Juror Julie A. Patterson testified that one of the jurors stated that she had read a newspaper article concerning the trial and stated that the Appellant had been previously convicted. Patterson related that the comment did not affect her decision and the comment was volunteered by the juror while the jurors were "chit-chatting" in groups. Patterson stated that comment was not made to the jury as a whole and no further mention was made of the matter.

■ Tex.R.App.P. 30(b)(7) provides, in pertinent part, that a new trial shall be granted, "[w]here after retiring to deliberate the jury has received other evidence; ...." [3] In situations where other evidence is received, it must be shown that (1) "other testimony" or "other evidence" was actually received by the jury; and (2) that such evidence was detrimental to the appellant. *Garza v. State*, 630 S.W.2d 272, 274 (Tex.Crim.App.1981). The effect of the "other evidence" on the jury or the question of injury to the Appellant is not a consideration. The controlling factor with regard to whether a new trial is required is the character of the evidence, in light of the issues before the jury, not the effect of such evidence on the jurors. *Id.* at 274; *Knorpp v. State*, 645 S.W.2d 892, 905 (Tex. App.—El Paso 1983, no pet.). It is not necessary to speculate on the probable effect upon the jury or to make a demonstration that one or more jurors were persuaded to vote for guilt because of the improper information. *Id.* at 905.

The State concedes that the mention of the prior convictions was adverse to the Appellant. The question remains whether the "other evidence" was received by the jury.

■ A new trial for receipt of other evidence is not necessitated every time

---

3. Former Tex.Code Crim.Pro.Ann. art. 40.03(7) contained the same wording.

something is mentioned among the jurors that does not find support in the evidence. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim.App.1978). A casual remark made in passing which does not lead to a general discussion does not constitute receipt of other evidence. *Gaona v. State*, 733 S.W.2d 611, 619 (Tex.App.—Corpus Christi 1987, pet. ref'd). The casual mention of other evidence during deliberations does not necessitate a new trial especially when immediately followed by admonishments that the other evidence should not be received. *Eckert v. State*, 623 S.W.2d 359, 365 (Tex.Crim.App.1981); *Stephenson*, 571 S.W.2d at 176; *Broussard v. State*, 505 S.W.2d 282, 285 (Tex.Crim.App.1974) (mention of prior conviction with prompt instruction not to consider by jury foreman and no discussion did not require new trial).

If there is conflicting evidence adduced concerning what occurred during jury deliberations, an issue of fact is raised and there is no abuse of discretion. *Gaona*, 733 S.W.2d at 617; *Eckert*, 623 S.W.2d at 364. In ruling on a new trial motion based on the jury's receipt of other evidence, the trial judge is free to believe one juror's testimony as to absence of improper conduct and to disbelieve and reject all or part of the testimony of the other jurors. *McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Crim.App.1976).

The Appellant argues that the holding in *Shivers v. State*, 756 S.W.2d 442 (Tex. App.—Houston [1st Dist.] 1988, no pet.) mandates a reversal in this case. In *Shivers*, the jury foreman drove to the scene of the crime during a noon recess to determine if an eyewitness could actually have seen the break-in of a store. The foreman then informed the other jurors that he felt that the witness could see from his house without obstructions of trees on a vacant lot. In that case, one of the other jurors said they should not discuss it and there was conflicting evidence about what he told the other jurors. The Court held that only stating that he had gone by the scene would not constitute "other evidence" adverse to the appellant. Nevertheless, the Court found that the foreman's observation

that the trees on the vacant lot did not restrict the eyewitness's view did constitute "other evidence" that was adverse to the appellant. The conviction was reversed. Likewise, in our case, one juror received "other evidence" about the prior convictions and certainly that was adverse to the Appellant.

The issue of jury misconduct was again before the Houston Court in *Long v. State*, 820 S.W.2d 888 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). During deliberations, a juror mentioned in this second trial for murder that the defendant had received a 55 year sentence at his first trial. The foreman told the jurors that they had been instructed not to discuss the previous trial and there was no further discussion of the issue. Without mention of its prior holding in *Shivers*, the Court held that the corrective action of the foreman was effective in removing the taint of the information during deliberation. It would appear that the panel in *Shivers* did not use a harm analysis, but the panel in *Long* did use such an analysis. The Court in *Stephenson* has authorized the use of a harm analysis and has recognized that "effective corrective action could remove the taint of such receipt during deliberations, similar to the corrective action of an instruction to disregard evidence improperly heard during trial." 571 S.W.2d at 176. The net result is that "other evidence" is not actually received by the jury under the second requirement of the *Stephenson* opinion unless it was discussed and considered by the jury and had some harmful effect on the defendant.

In the present case, there was clearly conflicting evidence. If the trial judge chose to believe the testimony of Juror Daniel that there was an admonition not to consider the prior convictions and there was no further discussion, then under the above-cited authority, the court did not abuse its discretion in denying the motion for new trial. We find that the court did not abuse its discretion. Point of Error No. One is overruled.

The judgment of the trial court is affirmed.