**Opinion filed November 29, 2012**



# In The

# Eleventh Court of Appeals

—————————

## No. 11-10-00368-CR

—————————

## DAVID LEE THOMISON, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**
**Haskell County, Texas**
**Trial Court Cause No. 6401**

### M E M O R A N D U M   O P I N I O N

The jury convicted David Lee Thomison of the offense of hindering a secured creditor and assessed punishment at confinement for fifteen years.  We affirm.

Appellant presents three issues on appeal.  In the first issue, he attacks the legal sufficiency of the evidence to support his conviction.  Specifically, appellant contends that "the State did not prove that the Appellant sold or disposed of over $200,000 worth of secured cattle beyond a reasonable doubt."

To determine the legal sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Turner v. State*, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991).  We determine whether any rational jury

could have found the elements of the offense beyond a reasonable doubt. *Turner*, 805 S.W.2d at 427.

A person who has signed a security agreement, which creates a security interest in property, commits the offense of hindering a secured creditor if, "with intent to hinder enforcement of that interest or lien, he destroys, removes, conceals, encumbers, or otherwise harms or reduces the value of the property." TEX. PENAL CODE ANN. § 32.33(b) (West 2011). The State charged appellant with a first-degree felony, and it had to prove that the value of the property involved was $200,000 or more. *See id.* § 32.33(d)(7). We note that the statute requires the State to prove that the value of the property was over $200,000, not that appellant received more than $200,000 from the sale of that property.

Capital Farm Credit[1] had a security interest in "[a]ll livestock now owned, possessed and hereafter acquired including but not limited to: SEE SECURITY AGREEMENT - EXHIBIT A - LIVESTOCK, and including all proceeds from the sale or disposition thereof." Exhibit A listed the number, description, and classification of the livestock. Randy Riley, a loan officer for Capital Farm Credit, inspected the property in July 2007 and prepared an evaluation of the livestock pledged as collateral for the loan. The trial court admitted the valuation without objection by appellant. Riley estimated the total value of the 573 head of livestock to be $330,140. When the bank demanded the return of the livestock, however, appellant had only thirty-four head of cattle out of the 573 head pledged. Although he returned the thirty-four, appellant failed to account for the others. While the loan officer admitted that he had not inspected all of the cattle, his evaluation is some evidence of the value of the livestock, and it was reasonable for the jury to infer that the value of the missing livestock exceeded $200,000. We overrule appellant's first issue.

In his second issue, appellant complains that Charles Fields, a witness who had been placed under the witness rule, testified during the punishment phase after violating the rule. Appellant alleges that Fields's wife attended the trial, took detailed notes of other witnesses' testimony, and shared them with Fields during recesses. The State contends that appellant failed to preserve this issue for review, that he failed to show a violation of the rule, and that any violation was harmless. We note that appellant did not object to the witness's testimony at trial;

---

[1]Capital Farm Credit merged with First Ag Credit in October 2008 and assumed all of its liabilities. It has also been called Ag Credit of Texas and Rolling Plains PCA.

instead, he asserted this as a ground in his motion for new trial. Therefore, the issue before us is whether the trial court abused its discretion when it denied his motion for new trial.

The State argues that appellant waived this complaint when he failed to object before, during, or after the conclusion of the witness's testimony. To preserve a complaint for appellate review, the party must make a timely, specific objection and obtain an adverse ruling. TEX. R. APP. P. 33.1. For errors that are not apparent from the record, a motion for new trial is a prerequisite "to adduce facts not in the record." TEX. R. APP. P. 21.2. In the absence of evidence that appellant was aware of the violation of the rule at the time of the questionable testimony, the motion for new trial was sufficient to preserve the error for our review.

We review the denial of a motion for new trial for an abuse of discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Upon a party's request, witnesses must be excluded from the courtroom during trial "so that they cannot hear the testimony of other witnesses." TEX. R. EVID. 614. The purpose behind the rule "is to prevent the testimony of one witness from influencing the testimony of another." *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996).

A "violation of the rule is not in itself reversible error, but only becomes so where the objected-to testimony is admitted" and affects the substantial rights of an appellant. *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989); *see also Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (citing TEX. R. APP. P. 44.2(b)). The test for an abuse of discretion in this situation is whether "the witness's *presence* during other testimony resulted in injury to the defendant." *Bell*, 938 S.W.2d at 50. Our determination of prejudice depends on a showing of two criteria: "(a) did the witness actually confer with or hear the testimony of the other witness; and (b) did the witness's testimony contradict the testimony of a witness from the opposing side or corroborate the testimony of another witness he had conferred with or had otherwise actually heard." *Webb*, 766 S.W.2d at 240.

We must consider the kind of witness, the nature of the testimony, and how it relates to the case-in-chief. *Guerra v. State*, 771 S.W.2d 453, 476 (Tex. Crim. App. 1988). For example, admitting testimony related to something other than guilt is unlikely to violate the rule because, usually, that type of testimony neither corroborates nor contradicts another witness's testimony. *Guerra*, 771 S.W.2d at 476. In *Upton*, the trial court permitted a witness to testify during the punishment phase after the rule had been invoked and after the witness had heard the guilt-phase testimony. *Upton v. State*, 894 S.W.2d 426, 428 (Tex. App.—Amarillo 1995, pet. ref'd). The

3

witness had no personal knowledge of the charged crime; instead, her testimony concerned the defendant's need for continued counseling. *Id.* The trial court did not abuse its discretion when it admitted the testimony because the testimony did not corroborate or contradict "evidence serving to establish or refute an element of the crime." *Id.*

In this case, the State called Fields after the jury had determined appellant's guilt. Fields had cosigned for a loan made to appellant prior to the loan here, and as the cosigner, he satisfied the note when appellant later defaulted and filed for bankruptcy. Although appellant had pledged cattle as collateral for that loan as well, Fields had no personal knowledge of what happened to the cattle and did not speculate. No other witnesses testified to facts surrounding that transaction. Fields's testimony did not contradict or corroborate any other evidence, and it was given during the punishment phase. Under these circumstances, we cannot say that the trial court abused its discretion when it denied appellant's motion for new trial on this ground. Appellant's second issue is overruled.

In his third issue, appellant contends that he is entitled to a new trial because the jury received evidence after it retired to deliberate on guilt/innocence. Appellant complains that the jury inadvertently received the State's copy of the jury charge, which included the prosecutor's notes in the margins. During deliberations, the trial court received a note from the jury, which asked, "Are we supposed to have this?" The trial court responded, "No" to the jury's question. Although appellant did not request that the trial court instruct the jury to disregard, he did request a mistrial, which the trial court denied. Appellant asserted this ground in his motion for new trial. The trial court conducted a hearing, heard evidence, and denied the motion for new trial.

We review the denial of a motion for new trial for an abuse of discretion. *Lewis*, 911 S.W.2d at 7. "The defendant must be granted a new trial . . . when, after retiring to deliberate, the jury has received other evidence." TEX. R. APP. P. 21.3(f). To be entitled to a new trial, the record must show both (1) that the jury actually received the evidence and (2) that the evidence was detrimental or adverse to the defendant. *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003). We determine whether the jury "received" other evidence by considering how extensively the jury examined the evidence and whether the jury was instructed to disregard the evidence. *Bustamante*, 106 S.W.3d at 743. To determine whether evidence was detrimental or adverse, we consider its character in light of the issue before the jury rather than its actual effect. *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. [Panel Op.] 1981). In most cases,

4

the evidence that has been considered detrimental contained new information that damaged the defendant because it has not been admitted during the trial. *Compare Carroll v. State*, 990 S.W.2d 761, 761–62 (Tex. App.—Austin, 1999, no pet.) (mug shot indicated prior arrest), *and In re M.A.F.*, 966 S.W.2d 448, 449 (Tex. 1998) (jury discovered marijuana cigarette in pocket of defendant's clothes), *with Juarez v. State*, No. 13-02-186-CR, 2003 WL 21686193, at *1 (Tex. App.—Corpus Christi July 18, 2003, no pet.) (memo. op., not designated for publication) (prosecutor's checklist of the elements of the offense and list of admitted exhibits added no new facts or information).

We need not decide whether the State's copy of the charge was "other" evidence "received" by the jury. The State's copy of the charge was an exact copy of the court's charge that had been submitted to the jury for deliberations, which included three alternate ways of proving the charged crime. The only difference was that the State's counsel had noted the manner and means in shorthand next to each of the three relevant paragraphs. The notes did not add additional facts; they were merely shorthand for what had been alleged. In fact, the exact handwritten words and phrases noted by the prosecutor were contained within each adjacent paragraph. We agree with the State that the jurors likely did not know who had made the notes; they were not biased or inflammatory. We do not believe that the State's copy of the charge with the handwritten notes was of such character to be adverse or detrimental to appellant during jury deliberations. We hold that the trial court did not abuse its discretion when it denied appellant's motion for new trial on this ground. We overrule appellant's third issue.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE

November 29, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Gray, C.J., 10th Court of Appeals.[2]

---

[2]Tom Gray, Chief Justice, Court of Appeals, 10th District of Texas at Waco, sitting by assignment to the 11th Court of Appeals.

5